**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

---

**MICHAEL R. PALADINO,**

              **Plaintiff,**

      -v-                                          20-CV-65JLS(Sr)

**JASON BEAUMONT,**
**F/S PROPERTIES, and**
**EAGLE ROY,**

              **Defendants.**

---

### REPORT, RECOMMENDATION AND ORDER

This matter was referred to the undersigned by the Hon. John L. Sinatra, pursuant to 28 U.S.C. § 636(b), for all pretrial matters and to hear and report upon dispositive motions. Dkt. #9.

Plaintiff commenced this action, *pro se*, alleging housing discrimination based upon his race and national origin and retaliation for complaining about housing conditions, in violation of his civil rights and the Fair Housing Act of 1968 ("FHA"), 42 U.S.C. §§ 3601 *et seq*. Dkt. #1.

Currently before this Court is defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (Dkt. #21), and plaintiff's motion for leave to amend the complaint. Dkt. #24. For the following reasons, it is recommended that defendants' motion be granted, and plaintiff's motion be denied.

**BACKGROUND**

Plaintiff's complaint alleges that he was a tenant at 52 Main Street, LeRoy, New York, which was owned by defendant Jason Beaumont, through F/S Properties. Dkt. #1. Plaintiff claims that on January 22, 2018, defendants discriminated against plaintiff because he is a Native American by evicting him after a four-year tenancy. Dkt. #1, p.4. Plaintiff claims that he was evicted because he called the police to complain about his living conditions there. Dkt. #1, p.4. He alleges that defendant Jason Beaumont made racial comments on the phone and at Beaumont's bar and that the property manager also called him an "Indian." Dkt. #1, p.4. Plaintiff claims race and national origin discrimination and retaliation. Dkt. #1. He argues that defendants are liable to him for all expenses he incurred from his eviction (including the loss of HUD apartment benefits), and his emotional distress. Dkt. #1.

Defendants answered (Dkt. #8), and moved for judgment on the pleadings, arguing that plaintiff fails to allege housing discrimination or a violation of his civil rights. Dkt. #21. They assert that plaintiff refused to quit the premises upon termination of the lease, requiring F/S Properties to obtain a warrant of eviction which was served upon plaintiff on January 28, 2018. Dkt. #21, pp.1-2. Following his eviction, defendants claim that plaintiff engaged in a series of frivolous legal or administrative actions in the LeRoy Town Court and the United States Department of Housing and Urban Development ("HUD"). Dkt. #21, p.2. Defendants ask the Court to take judicial notice of several public records relating to plaintiff's claim, including the eviction

proceeding;[1] small claims action;[2] and HUD Investigation Closure Letter.[3] Dkt. #21, pp.6-7.

Plaintiff responded to the motion to dismiss with a motion to amend the complaint. Dkt. #24. In his motion, which does not contain a proposed amended complaint, plaintiff proffers five exhibits, including a copy of his original complaint to HUD, in which plaintiff described an incident at Beaumont's bar in 2013 where another patron said "Indian" and a subsequent incident where Beaumont made a comment that plaintiff could not hear but believed was at plaintiff's expense. Dkt. #24, p.4. Plaintiff also claims that Beaumont asked another tenant to "keep an eye on the place," and that tenant harassed, stalked, called plaintiff an "Indian" and threatened plaintiff with physical harm. Dkt. #24, p.5. Plaintiff states that he complained about damaged property, eavesdropping and loud noises during all hours of the day and night, but defendant responded with laughter or a racist comment, prompting plaintiff to call the police department approximately 5-6 times during September and October of 2017. Dkt. #24,

---

[1] This exhibit demonstrates that defendants petitioned for the removal of plaintiff as a holdover tenant on January 8, 2018, with the warrant of eviction signed by the Justice for the Town of Leroy on January 22, 2018, and served on January 29, 2018. Dkt. #21-4.

[2] This exhibit demonstrates that plaintiff commenced a small claims action against defendants, resulting in a judgment dated June 28, 2018, dismissing plaintiff's claim and granting the counterclaim of F&S Properties, LLC for a total award of $1,250.00 for remediation of the apartment. Dkt. #21-5.

[3] By letter dated June 19, 2019, HUD advised plaintiff that it had completed its investigation into plaintiff's complaint and determined that no reasonable cause exists to believe that a discriminatory housing practice had occurred. Dkt. #21-6. Defendant informed HUD that plaintiff's monthly lease was terminated because plaintiff called the police six times in one month at all hours of the night claiming that another tenant was harassing him. Dkt. #21-6, p.5. With respect to a potential claim of disparate treatment, HUD determined that defendants owned about 50 rental units; plaintiff was the only Native American tenant; and defendants also evicted seven white tenants during 2017-2018. Dkt. #21-6, p.8.

p.5. Plaintiff's HUD complaint recognizes that "my calling the police most likely resulted in me being evicted from the apartment [in] February of 2018." Dkt. #24, p.5. Plaintiff also attaches a copy of the transcript of his eviction proceeding in the Leroy Village court on January 22, 2018, during which the Court explained to plaintiff that his monthly lease was properly terminated and that he would lose his HUD benefits if he refused to vacate and was evicted. Dkt. #24, pp.8-9 & 20. Plaintiff attaches paperwork from other rental properties indicating that his applications for housing were rejected because of a prior reported eviction, negative landlord statement, and/or judgment for apartment damage. Dkt. #24, pp.25-29. Plaintiff's declaration in support of his motion alleges that a tenant called him an "[I]ndian," and that Beaumont made a racial slur by suggesting that an upstairs door would be "replaced by beads." Dkt. #24, p.2.

Defendants reply that plaintiff's motion to amend his complaint still fails to plausibly allege an intent to discriminate against plaintiff. Dkt. #26.

### DISCUSSION AND ANALYSIS

**Standard for Leave to Amend**

Fed. R. Civ. P. 15(a)(2) provides that a party may amend a pleading with the opposing party's written consent or the court's leave, which is to be given freely when justice so requires. Leave to amend should be granted unless the party seeking leave has acted in bad faith, there has been an undue delay in seeking leave, there will be unfair prejudice to the opposing party if leave is granted, or the proposed

amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *State Teachers Ret. Bd. v. Fluor Corp*., 654 F.2d 843, 856 (2d Cir. 1981); Fed. R. Civ. P.15(a). An amendment is futile if it cannot survive a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Parker v. Columbia Pictures Indus*., 204 F.3d 326, 339 (2d Cir. 2000). "[W]here the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity to replead is rightfully denied." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

### **Dismissal Standard**

A motion to dismiss brought after the filing of an answer is considered as a motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001). "Judgment on the pleadings may be granted under Rule 12(c) where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings." *McAuliffe v. Barnhart*, 571 F. Supp. 2d 400, 402 (W.D.N.Y. 2008). "In deciding a Rule 12(c) motion for judgment on the pleadings, the court should 'apply the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party.'" *Aboushama v. EMF Corp.*, 214 F. Supp. 3d 202, 205 (W.D.N.Y. 2016), *quoting Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015).

To survive a motion to dismiss pursuant Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility "depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679.

When considering motions to dismiss the claims of plaintiffs proceeding *pro se*, courts construe the pleadings liberally, reading such submissions to raise the strongest arguments they suggest. *Weinstein v. Albright*, 261 F.3d 127, 132 (2d Cir. 2001). A complaint need not contain specific facts to establish a *prima facie* case of discrimination, but because the elements of a *prima facie* case provide an outline of what is necessary to render plaintiff's claims plausible, they may be considered in assessing whether there is sufficient factual matter in the complaint which, if true, provides the defendant with fair notice of plaintiff's claim, and the grounds on which it rests. *Kelly v. New York State Office of Mental Health,* 200 F. Supp.3d 378, 389 (E.D.N.Y. 2016); *Allessi v. N.Y. State Dep't of Corr. & Cmty. Supervision,* 16 F. Supp.3d

6

221, 226-27 (W.D.N.Y. 2014). A *pro se* litigant should be afforded every reasonable opportunity to demonstrate that she has a valid claim. *Satchell v. Dilworth*, 745 F.2d 781, 785 (2d Cir. 1984).

### **Evidence**

"In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration "to facts stated on the face of the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of New York*, 199 F.3d 99, 107 (2d Cir. 1999); *See also Kramer v. Time Warner, Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). "Where a plaintiff has relied on the terms and effect of a document in drafting the complaint and that document is thus integral to the complaint," the district court may consider the contents of the document "even if it is not formally incorporated by reference." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005) (internal quotations omitted), *quoting Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002). A Court may take judicial notice of a charge of discrimination and agency determination. *Muhammad v. New York City Transit Auth.,* 450 F. Supp.2d 198, 204-05 (E.D.N.Y. 2006) (EEOC charge); *See Hughes v. Xerox Corp.*, 37 F. Supp.3d 629, 636-37 (W.D.N.Y. 2014) ("While matters outside the four corners of a complaint are not typically relevant on a motion to dismiss, materials that are expressly referenced in the complaint and submitted by the parties in connection with the underlying motion, such as the EEOC charge and DHR complaint . . . may be considered by the Court.").

**Civil Rights Act**

The Civil Rights Act ensures that "all citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property," 42 U.S.C. § 1982. Furthermore, under 42 U.S.C. § 1981, all persons within the jurisdiction of this country enjoy "the same right in every State or Territory to make and enforce contracts" and "to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, . . . and to no other," 42 U.S.C. § 1981(a). These rights are protected against impairment by "nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c); *See Reyes v. Erickson*, 238 F. Supp. 2d 632, 638 (S.D.N.Y. 2003) ("The statute's prohibitions apply to private and state actors.")

To state a claim pursuant to these statutes, a plaintiff must plausibly allege the following elements: (1) he is a member of a racial minority; (2) defendant's intent to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute, *to wit*, making or enforcing a contract (§ 1981), or leasing property (§ 1982). *Francis v. Kings Park Manor, Inc.*, 944 F.3d 370, 380 (2d Cir. 2019), *vacated en banc*, 992 F.3d 67 (2d Cir. 2021); [4] *Mian v. Donaldson, Lufkin &*

---

[4] Reviewing the panel's decision *en banc*, the Court of Appeals vacated the panel's determination that a tenant's claim that his landlord failed to respond to tenant-on-tenant racial harassment plausibly alleged intentional racial discrimination as required to state a claim pursuant to 42 U.S.C. § 1981; 42 U.S.C. § 1982 and the Fair Housing Act.

*Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam), *cert. denied*, 516 U.S. 824 (1995).

### **Fair Housing Act**

The Fair Housing Act ("FHA"), prohibits, *inter alia,* discrimination in the terms, conditions, or privileges of sale or rental of a dwelling because of race, color, religion, sex, familial status, or national origin. 42 U.S.C. § 3604(b). A violation of the FHA may be established on a theory of disparate impact by alleging a causal connection between a facially neutral policy and a disproportionate and adverse impact on a protected group or on a theory of disparate treatment by alleging plaintiff was treated differently from similarly situated persons or groups because of plaintiff's membership in a protected class. *Moody v. Related Cos., L.P.*, 620 F. Supp.3d 51, 55 (S.D.N.Y. 2022). While a plaintiff need not allege that the decision complained of was made with discriminatory intent when pursuing a disparate impact claim, *See Housing Rights Initiative v. Compass, Inc.*, 21-CV-2221, 2023 WL 1993696, at *20 (S.D.N.Y. Feb. 14, 2023), a disparate treatment claim "is appropriately dismissed where a complaint's factual allegations do not permit the conclusion that the complained-of conduct occurred because of discriminatory animus." *Logan v. Matveeskii*, 175 F. Supp.3d 209, 226 (S.D.N.Y. 2016).  To proceed on a disparate treatment theory, a plaintiff must allege enough facts to state a plausible claim that animus against the protected group was a significant factor in the position taken by the defendant. *Perricone-Bernovich v. Tohill*, 843 Fed. App'x 419, 421 (2d Cir. 2021).

9

"The FHA also prohibits retaliation against individuals who have asserted their rights under the statute. 42 U.S.C. § 3617 ("It shall be unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by [§ 3604]). To state a claim of retaliation under the FHA, plaintiff must plausibly allege that: (1) he engaged in protected activity by opposing conduct prohibited under the FHA; (2) defendants were aware of that activity; (3) defendants subsequently took adverse action against him; and (4) a causal connection exists between the protected activity and the adverse action, *i.e.*, that a retaliatory motive played a part in the adverse action. *Favourite v. 55 Halley St., Inc.*, 381 F. Supp.3d 266, 278 (S.D.N.Y. 2019), *quoting Lynn v. Vill. Of Pomona*, 373 F. Supp.2d 418, 432 (S.D.N.Y. 2005), *aff'd*, 212 Fed. App'x 38 (2d Cir. 2007). Protected activity under the FHA refers to action taken to protest or oppose statutorily prohibited discrimination, *i.e.,* retaliating because a person made a complaint, testified, assisted, or participated in any manner in a proceeding under the FHA. *Johnson v. YWCA Residence, LLC*, 2014 WL 12782728, at *4 (July 9, 2014), *citing* 24 C.F.R. . § 100.400 (c) (5).

### Analysis

Plaintiff has not alleged that he was evicted from his apartment because of a policy or practice that disproportionately and adversely affected Native Americans or

10

other protected groups. As a result, plausible allegations of discriminatory intent are required to proceed under both his Fair Housing Act and Civil Rights Act claims. Plaintiff has not satisfied this standard because he has not alleged any facts to suggest that his identity as a Native American was the basis for his eviction. To the contrary, plaintiff alleges, in both his complaint and in the HUD complaint submitted in support of his motion to amend his complaint, that the basis for his eviction was his repeated complaints to the police regarding living conditions, including damaged property, eavesdropping and loud noises at all hours of the day and night. *See Yusef v. Vassar Coll.*, 35 F.3d 709, 714 (2dCir. 1994) (dismissal warranted where complaint identified other possible non-discriminatory reasons for the adverse decision). Even if the Court were to take judicial notice of defendants' statement to HUD that plaintiff complained to the police that another tenant was harassing him, any inference that such harassment was due to his identity as a Native American would still fail to state a claim against defendants because a landlord cannot be held liable under the FHA for tenant-on-tenant harassment even if the landlord is aware that the harassment is based on race. *See Francis*, 992 F.3d at 70. Moreover, plaintiff's complaint to HUD cannot constitute protected activity for a retaliation claim because such complaint was made after plaintiff's eviction.

"The naked assertion by plaintiff that 'race was a motivating factor' without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's race is too conclusory to survive a motion to dismiss." *Williams v. Calderoni*, No. 11 Civ. 3020, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012), *aff'd sub nom. Williams v.*

11

*Schwartz*, 529 Fed. App'x 89 (2d Cir. 2013), *cert. denied*, 572 U.S. 1021 (2014). Here, the only allegations against defendants are that Jason Beaumont made racial comments on the phone and at Beaumont's bar, and that the property manager also called him an "Indian." Dkt. #1, p.4. As amplified by plaintiff's motion to amend his complaint, Beaumont suggested that a door would be "replaced by beads;" a tenant at some point during plaintiff's tenancy referred to plaintiff as an "Indian;" and a patron at Beaumont's bar used the term "Indian" sometime during 2013-2014. Dkt. #24, pp.2 & 5. Such stray remarks are insufficient to plausibly allege an intent by defendants to discriminate against plaintiff. *See Mohamed v, McLaurin*, 390 F. Supp.3d 520, (D.Vt. 2019) (the more remote and oblique the remarks are in relation to the decision-maker's adverse action, the less they prove the action was motivated by discrimination), *citing Henry v. Wyeth Pharmeceuticals, Inc.*, 616 F.3d 134, 149 (2d Cir. 2010); *See also Sherman v. Town of Chester*, 752 F.3d 554, 567 (2d Cir. 2014) (spray-painted swastika and citizen statements expressing fear that community might become a "Hassidic Village" failed to establish municipality's intent to discriminate).

## CONCLUSION

For the foregoing reasons, it is recommended that defendant's motion to dismiss (Dkt. #9), be granted, and plaintiff's motion for leave to amend the complaint (Dkt. #24), be denied.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to</u>

13

<u>comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

DATED:   Buffalo, New York
         August 31, 2023

                                         <u>s/ H. Kenneth Schroeder, Jr.</u>
                                         **H. KENNETH SCHROEDER, JR.**
                                         **United States Magistrate Judge**